[Cite as *Pippin v. S. Ohio Correctional Facility*, 2009-Ohio-6071.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

TONY PIPPIN

    Plaintiff

    v.

SOUTHERN OHIO CORRECTIONAL FACILITY

    Defendant
    Case No. 2008-08388

Judge Clark B. Weaver Sr.
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1}   Plaintiff brought this action alleging that defendant's employees assaulted him.   The issues of liability and damages were bifurcated and the case proceeded to trial before a magistrate on the issue of liability.

{¶ 2}   As an initial matter, on September 10, 2009, defendant filed a motion to quash all subpoenas issued at plaintiff's request inasmuch as the mandatory witness fees were not tendered.   Upon review, the motion is GRANTED and all of the subpoenas issued at plaintiff's request are hereby quashed.

{¶ 3}   At all times relevant, plaintiff was an inmate in the custody and control of defendant pursuant to R.C. 5120.16.   The underlying facts of this case are largely undisputed.   On July 7, 2008, at approximately 4:15 p.m., Corrections Officers (CO) Ben Gunn and Chris Moore, and Jan Dayton, RN, were delivering medications to plaintiff and other inmates on his range.   After Gunn opened the food slot[1] on plaintiff's cell and

---

[1]Plaintiff described the food slot as a rectangular opening in the cell door that is covered by a piece of solid steel that slides open and closed from the left side of the slot.

handed him his medication, plaintiff thrust his right arm through the slot and refused several orders to pull his arm back into the cell. Gunn then used his foot to force the cover of the slot closed, which caused the cover to strike the back of plaintiff's arm, forcing him to retract it . Gunn then closed and locked the slot. Plaintiff asserts that the force used by Gunn was excessive and that the impact of the cover on his arm caused permanent injury.

{¶ 4} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 5} "(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 6} "(a) Self-defense from physical attack or threat of physical harm;

{¶ 7} "(b) Defense of another from physical attack or threat of physical attack;

{¶ 8} "(c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 9} "(d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 10} "(e) Prevention of an escape or apprehension of an escapee; or

{¶ 11} "(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 12} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions. * * * Obviously 'the use of force is a reality

of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Mason v. Ohio Dept. of Rehab. & Corr.* (1990), 62 Ohio Misc.2d 96, 101-102. (Internal citations omitted.)

{¶ 13} Plaintiff testified that when Gunn came to his cell to deliver his medication he informed Gunn that he had a seizure during the night and wanted to go to the infirmary, but that Gunn denied his request. According to plaintiff, Gunn then denied his request to speak with a "white shirt," a corrections sergeant, lieutenant, or captain in a supervisory position. Plaintiff stated that he then stuck his right arm out of the food slot and placed it flat against the door, to which Gunn replied "bitch, I'm not calling you no white shirt." According to plaintiff, a brief argument ensued during which he pulled his hand and forearm into the cell but left his elbow sticking out of the slot. Plaintiff testified that Gunn then attempted to physically push his arm into the cell but was unsuccessful and then turned to the left of the cell door and began kicking the cover and causing it to strike his arm. Plaintiff stated that after the third kick, he pulled his arm into his cell. Plaintiff testified that about an hour after the incident, Corrections Lieutenant Tackett and other COs came to his cell, and that Dayton examined him from a distance, but that he was never taken to the infirmary. Plaintiff admitted that he knew that sticking his arm out of the food slot violated institutional rules and that he ignored several orders to pull his arm back into the cell.

{¶ 14} As a result of the incident, a Use of Force Committee conducted an investigation to determine whether Gunn used excessive force in dealing with plaintiff. The committee interviewed plaintiff, Gunn, Dayton, and Moore, reviewed the video of the incident (Plaintiff's Exhibit 14), and issued a report. (Defendant's Exhibit J.) The committee concluded that the force used by Gunn was not excessive. Phillip Kerns, defendant's warden, reviewed the committee report and concurred with its conclusion. (Defendant's Exhibit K.)

{¶ 15} Plaintiff stated that he believes the statements that Gunn, Moore, and Dayton gave to the committee contained numerous fabrications in an attempt to "cover"

themselves.  Specifically, plaintiff asserts that Gunn's statements to the committee that plaintiff attempted to grab him and that he merely "put pressure" on the cover to try and close it are false and that the video of the incident shows otherwise.

{¶ 16} Upon review of the video, the court agrees that it shows Gunn kicking the cover, but that it is unclear whether plaintiff attempted to grab Gunn.  (Plaintiff's Exhibit 14.)  However, the court finds that Gunn's actions were justified and not excessive in that plaintiff disobeyed several direct orders to pull his arm back into his cell and in that it was reasonable for Gunn to believe that plaintiff posed a threat to him while his arm was outside of the cell.  Therefore, the court finds that Gunn did not use excessive force when dealing with plaintiff during the July 7, 2008 incident.  Accordingly, judgment is recommended in favor of defendant.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Jennifer A. Adair
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Tony Pippin, #536-301
878 Coitsville-Hubbard Road
Youngstown, Ohio 44505

MR/cmd
Filed October 21, 2009
To S.C. reporter November 17, 2009